IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IMMERSION RESEARCH, INC., on behalf of itself and all others similarly situated,<br><br>              Plaintiffs,<br><br>      vs.<br><br>WILLIAM PRYM GMBH & CO., KG; PRYM CONSUMERS USA, INC.; PRYM FASHION, INC.; YKK CORPORATION; YKK CORPORATION OF AMERICA, INC.; YKK (U.S.A.) INC.; YKK SNAP FASTENERS AMERICA, INC.; COATS PLC; COATS NORTH AMERICA DE REPUBLICA DOMINICANA, INC,; AND SCOVILL FASTENERS, INC.,<br><br>              Defendants. | <br><br>Civil Action No. _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, Immersion Research, Inc. ("IR" or "Plaintiff"), brings this action, on behalf of itself and others similarly situated, for damages and injunctive relief for price fixing, market and customer allocation, and other anticompetitive conduct that is prohibited under, *inter alia,* Section 1 of the Sherman Act of 1890, 15 U.S.C. §1, and the antitrust laws of the United States.  The above-captioned defendants ("Defendants") are manufacturers of fasteners and zippers for the apparel industry, and participated in an overarching, on-going, international conspiracy and cartel. Based upon personal knowledge, information and belief, and the investigation of counsel, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1.    This case arises out of a long-running, worldwide conspiracy among Defendants and their co-conspirators to fix the prices of, and allocate customers and

geographic territories for zippers, snap fasteners, open prong fasteners, capped fasteners, hooks and eyes, rivets, burrs, post or prong rings, boot hooks, eyelets, tack buttons, sockets, backplates, studs, screw studs, posts, washers, grommets, caps, locking fasteners and "notions" or small items of numerous kinds and types (collectively referred to as "Fasteners and/or Zippers"), which are used for fastening materials together in a wide variety of products. Fasteners and/or Zippers are used primarily in the garment, apparel and footwear industries for the manufacture of clothes and shoes.

2.     This case is brought as a class action on behalf of all persons and entities who, at any time from January 1, 1999 to the present (hereinafter, the "Class Period"), purchased Fasteners and/or Zippers directly from one or more of the Defendants and/or their co-conspirators.

3.     During the Class Period, and possibly earlier, Defendants conspired to fix, raise, maintain and/or stabilize prices of Fasteners and/or Zippers, and to allocate customers and geographic markets in the worldwide market for Fasteners and/or Zippers.

4.     As alleged herein, Defendants agreed with each other on coordinated price increases, fixed minimum prices, allocation of customers, sharing of markets and exchanging other commercially important and confidential information.

5.     As a direct and proximate result of Defendants' unlawful price-fixing, market and customer allocation conspiracy, Plaintiff and the members of the Class (defined below) have paid artificially high prices for Fasteners and/or Zippers (as compared to what they would have paid in a competitive market) and have therefore suffered injury to their respective businesses and property.

2

6.    During the period relevant to this Complaint, Plaintiff has been a direct purchaser of Fasteners and/or Zippers from one or more of the Defendants. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23, and pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 15 and 26, to recover treble damages, and the costs of suit, including reasonable attorneys' fees, to enjoin the continuation of the conspiracy, and for such other relief as is afforded under the antitrust laws of the United States for Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## PLAINTIFF

7.    Plaintiff IR is a Pennsylvania company with its principal place of business located in Confluence, PA. During the Class Period, IR purchased Fasteners and/or Zippers directly from one or more of the Defendants.

8.    The prices that IR paid to Defendants for Fasteners and/or Zippers were greater than the prices IR would have paid absent the conspiracy alleged herein. IR has therefore been injured in its business and property by reason of Defendants' antitrust violations. IR asserts its claims on behalf of itself and all direct purchasers who, during the Class Period, purchased Fasteners and/or Zippers from one or more of the Defendants.

## DEFENDANTS

The Prym Group Defendants

9.    Defendant William Prym GmbH & Co. KG ("William Prym") is a company established under the laws of Germany with its principal place of business located at Zweifaller Strabe 130, D-52224 Stolberg, Germany. William Prym was founded in 1530 and claims to be the oldest family-owned business in Germany. In

3

1924, Hans August Prym established William Prym, Inc. U.S.A. in New York City as the exclusive domestic importer and sales agent for the company. Presently, William Prym is made up of three divisions, with sales offices and production facilities located in over sixty countries and operating in every major market worldwide. The Prym Consumer division is a leading global supplier of sewing products and needlework, as well as fashion accessories, and fasteners such as snaps, buttons, eyelets, buckles, hooks and eyes and snap attacher tools. The Prym Fashion division offers fastening solutions for clothes and fastening systems for the garment, leather and textile industries, including press fasteners, zips, jean buttons and rivets, eyelets and washers for every application, as well as attaching technology, pneumatic presses, semi and fully automatic machines. The Inovan division provides innovative solutions in the fields of material and surface technology, as well as fasteners and precision mechanical parts. During the Class Period, William Prym manufactured, sold and/or distributed Fasteners and/or Zippers to customers throughout the United States and the world, either directly or through its affiliated companies.

10.    Defendant Prym Consumer USA, Inc. ("Prym USA") is a South Carolina corporation with its principal place of business located at 950 Brisack Road, Spartanburg, SC 29303. Prior to 2005, Prym USA was known as the Prym Dritz Corporation. Prym USA is a wholly-owned and controlled subsidiary of a United States holding company, William Prym, Inc., which is a wholly-owned and controlled subsidiary of William Prym. Prym USA is the largest manufacturer and distributor of sewing, quilting and craft-related notions in North America, selling to retailers in the United States under the Dritz® and Prym Sewing™ brands. During the Class Period, Prym USA directly

4

manufactured, sold and/or distributed Fasteners and/or Zippers to customers throughout the United States.

11.    Prym Fashion, Inc. ("Prym Fashion") is a South Carolina corporation with its principal place of business located at 950 Brisack Road, Spartanburg, SC 29303. Prym Fashion is a wholly owned and controlled subsidiary of Prym Inovan GmbH Co. KG of Stolberg, Germany, which is a wholly-owned and controlled subsidiary of William Prym. Prym Fashion sells under the brands Prym, Fiocchi and Éclair Prym. During the Class Period, Prym Fashion directly manufactured, sold and/or distributed Fasteners and/or Zippers to customers throughout the United States.

12.    Defendants William Prym, Prym Consumer USA, Inc. and Prym Fashion, Inc., are collectively referred to herein as the "Prym Group."

The YKK Group Defendants

13.    Defendant YKK Corporation is a corporation established under the laws of Japan with its principal place of business located at 1, Kanda Izumi-cho, Chiyoda-ku, Tokyo 101-8642, Japan. YKK Corporation maintains one hundred and nineteen (119) affiliated companies that operate in seventy (70) countries throughout the world. YKK Corporation was founded in 1934 and oversees a "Fastening Products Group" and a "Machinery and Engineering Group." YKK Corporation opened its first United States office in New York in 1960. YKK Corporation is the largest manufacturer of zippers in the world with 50% of the worldwide market share. YKK Corporation counts multinational clothing companies Levi Strauss, Adidas and Nike as global clients. During the Class Period, YKK Corporation manufactured, sold and/or distributed Fasteners

and/or Zippers under the YKK® brand to customers throughout the United States and the world, either directly or through its affiliated companies.

14.    Defendant YKK Corporation of America, Inc. ("YCA"), a subsidiary of YKK Corporation, is a New York corporation with its principal places of business located at One Parkway Center, 1850 Parkway Place, Suite 300, Marietta, Georgia 30067. YCA has fifteen (15) operating companies, located in the United States, Canada, Mexico, the Caribbean, Central America and South America, under its purview. During the Class Period, YCA manufactured, sold and/or distributed Fasteners and/or Zippers to customers throughout the United States and the Western Hemisphere, either directly or through its affiliated companies.

15.    Defendant YKK (U.S.A.) Inc. ("YKK USA"), subsidiary of Defendant YKK Corporation, is a New York corporation with its principal place of business located at 1300 Cobb Industrial Drive, Marietta, Georgia 30066. YKK USA operates the Fastening Products Group in the United States, with sales and service offices located in Rutherford, New Jersey; New York, New York; Anaheim, California; Renton, Washington; Addison, Texas; El Paso, Texas; and Glenview, Illinois. YKK (USA) Inc. is the largest zipper producer in the United States with over one thousand (1,000) styles and colors. During the Class Period, YKK USA manufactured, sold and/or distributed Fasteners and/or Zippers to customers throughout the United States, either directly or through its affiliated companies.

16.    Defendant YKK Snap Fasteners America, Inc. ("YKK Snap Fasteners"), a subsidiary of Defendant YKK Corporation, is a Delaware corporation with its principal place of business located at 302 Factory Avenue, Lawrenceburg, Kentucky 40342, and

with manufacturing plants located at 1090 Industry Road, Lawrenceburg, Kentucky 40342 and 200 Universal Drive, Centerville, Tennessee 37033. YKK Snap Fasteners is a part of the Fastening Products Group and operates sales offices in El Paso, Texas and New York, New York. Founded in 1895, predecessors of YKK Snap Fasteners have been making Fasteners and/or Zippers in the United States for more than a century. In 1987, predecessors of YKK Snap Fasteners joined forces with YKK Corporation, the world's foremost zipper manufacturer. During the Class Period, YKK Snap Fasteners manufactured, sold and/or distributed Fasteners and/or Zippers to customers throughout the United States, either directly or through its affiliated companies.

17.    YKK Group brands and trademarks sold in the United States include Vislon®, YZip®, Ever Bright®, Excella®, Eflon®, FlatKnit™, PowerHook™, Metallion®, Conceal®, AquaGuard®, Lumifine®, Cyberloc™, Crystalloc™, Hammerloc™, Locwave™, Spacedome™, Shockonloc™, Zipcap™, L-Type®, Locwave™, and Prifa®.

18.    Defendants YKK Corporation, YCA, YKK USA and YKK Snap Fasteners, together with the numerous other subsidiaries of the YKK Corporation not named as Defendants here, are collectively referred to herein as "the YKK Group."

The Coats Group Defendants

19.    Defendant Coats plc is a corporation established under the laws of the United Kingdom with its principal place of business located at 1 The Square, Stockley Park, Uxbridge, Middlesex, UB11 ITD, United Kingdom. Coats plc was founded in 1755 and listed on the London Stock Exchange in 1890. Since April 2004, Guinness Peat Group plc has owned 100% of the ordinary shares in Coats Group Limited, which in turn

owns 100% of the ordinary shares in Coats plc. When Guinnes Peat Group plc acquired a partial interest in Coats plc in 2003, Coats plc's shares were delisted from the London Stock Exchange. Coats plc was known by several other names during the Class Period prior to 2001, including Coats Patons plc (1961 to 1986) and Coats Viyella plc (1986 to 2001) before being renamed Coats plc in 2001. Coats is the second largest manufacturer of zippers in the world (known in the United Kingdom as "zips"), sold under the Opti® and Opti-lon® brand and suitable for all kinds of industrial applications in the apparel and specialty sectors. The Coats Group also claims to be the fastest growing zipper manufacturer in the world. During the Class Period, Coats plc and its predecessor entities manufactured, sold and or distributed Fasteners and/or Zippers to customers throughout the United States and sixty seven (67) countries throughout the world, either directly or through its affiliated companies.

20.     Defendant Coats North America de Republica Dominicana, Inc. ("Coats North America") is a North Carolina corporation with its principal place of business located in Charlotte, North Carolina. Coats North America is a wholly-owned and controlled subsidiary of Defendant Coats plc.  During the Class Period, Coats North America manufactured, sold and/or distributed Fasteners and/or Zippers to customers throughout the United States, either directly or through its affiliated companies.

21.     Coats plc and Coats North America, together with their parents and numerous other subsidiaries not named as Defendants here, will be referred to herein as "the Coats Group."

The Scovill Defendant

22.    Defendant Scovill Fasteners, Inc. ("Scovill") is a Delaware corporation founded in 1802 in Waterbury, Connecticut, which as of 1998 has had its principal place of business relocated to 1802 Scovill Drive, Clarkesville, Georgia 30523. During the Class Period, Scovill manufactured, sold and/or distributed Fasteners and/or Zippers under the DOT® brand to customers throughout the United States and the world.

23.    Scovill brands sold in the United States include Gripper®, DOT®, LifttheDOT®, Pull-the-DOT®, DuraMark®, Whispersnap™, Maxi-Snap™ and MightSnap™.

## CO-CONSPIRATORS AND AGENTS

24.    Other natural persons, corporations, and entities not named as Defendants herein, may have participated in the unlawful conspiratorial activity alleged herein in violation of the antitrust laws of the United States.

25.    Whenever in this Complaint reference is made to an act, statement, or transaction of business by any corporation or entity, the allegation means that the corporation or entity acted, stated, or transacted business by or through its directors, members, partners, officers, employees, or agents, while they were engaged in the management, direction, control, or conduct of the corporation's or entity's business and acting within the scope of their authority.

## JURISDICTION AND VENUE

26.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. §§ 15, 26.

27.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§§15, 22 and 26 and pursuant to 28 U.S.C. § 1391(b), (c) and (d), because, at all times relevant to

the class, Defendants transacted business, were found, or acted through subsidiaries or agents present in this district and a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

28.    This Court has *in personam* jurisdiction over each of the Defendants because, *inter alia,* each of the Defendants: (a) committed acts in furtherance of the conspiracy alleged herein in this district and directed the unlawful conspiracy through persons and entities located in this district, including fixing the prices of Fasteners and/or Zippers sold to purchasers in this district; (b) transacted business in Fasteners and/or Zippers and other products in this district; (c) maintains and has maintained continuous and systematic contacts with this district over a period of years; (d) has substantial aggregate contacts with the United States as a whole; and/or (e) has purposefully availed itself of the benefits of doing business in this district. Accordingly, each of the Defendants maintains minimum contacts with this district more than sufficient to subject it to service of process and sufficient to comply with due process of law.

29.    Alternatively, there is jurisdiction over the foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

## FACTUAL ALLEGATIONS

The Products and Market

30.    The Fasteners and/or Zippers market, as used herein, includes, but is not limited to, zippers, snap fasteners, open prong fasteners, capped fasteners, hooks and eyes, rivets, burrs, post or prong rings, boot hooks, eyelets, tack buttons, sockets, backplates, studs, screw studs, posts, washers, grommets, caps, locking fasteners and

"notions" or small items of numerous kinds and types (excluding needles) used for fastening materials together in a wide variety of products.

31.    Fasteners and/or Zippers are used primarily in the garment, apparel and footwear industries for the manufacture of clothes and shoes.

32.    Zip fasteners temporarily join two adjoining pieces of fabric. Snap fasteners are a pair of interlocking discs commonly used in place of buttons to fasten clothing. Snaps can be attached to material by hammering, plying or sewing. For plying snap fasteners, there are special snap pliers. Other textile fasteners employ systems such as hook elements, mushroom elements and loop elements for the purpose of binding fabrics.

33.    Demand for Fasteners and/or Zippers is driven by the industries in which they are applied, most notably the apparel industry.

34.    Fasteners and/or Zippers represent approximately 4% of the total apparel cost.

35.    The United States market for Fasteners and/or Zippers is estimated at over $600 million in annual sales.

The EC Investigation

36.    On September 19, 2007, the European Commission ("EC") issued a press release announcing the results of a nearly six-year investigation into suspected anticompetitive conduct among the major manufacturers of Fasteners and/or Zippers in the world.

37.    The EC investigation uncovered a long-running, multifaceted international conspiracy to fix prices and allocate customers and markets worldwide in the Fasteners and/or Zippers industry.

38.    The EC began its investigation after "certain information had been brought to its attention." This information led the EC to conduct surprise inspections in November 2001 on the premises of several producers of "hard and soft haberdashery," known in the United States generally as "notions" or small items used for sewing garments and in the manufacture of apparel and footwear.

39.    The surprise inspections by the EC triggered applications by the Prym Group, the Coats Group and the YKK Group - the three largest manufacturers in the Fasteners and/or Zippers industry - for immunity or a reduction of fines under the EC's leniency program.

40.    The EC inspections uncovered evidence showing that the major companies in the industry joined together to illegally reduce competition in the market for "zip fasteners" (zippers) and "other fasteners," which the EC explained were fastening devices other than zippers, such as snap buttons and rivets, and "their attaching machines."

41.    The EC imposed substantial fines totaling over 328 million euros (or approximately $456 million U.S. dollars) on Defendants the Prym Group, the YKK Group, the Coats Group, and Scovill, as well as on unnamed co-conspirators A Raymond S.A.R.L., Berning & Soehne GmbH & Co. KG and the German trade association Fachverband Verbindungs-und Befestigungstecbnik ("VET"), for operating a cartel in the markets for Fasteners and/or Zippers in Europe and worldwide.

42.    The EC's press release further noted that any person or firm damaged by the anticompetitive behavior described in the release may bring a private action for damages "submitting elements of the published decision as evidence that the behavior took place and was illegal."

43.    The evidence of the international conspiracy was further confirmed by documents produced by the Defendants to the EC during the investigation and by statements provided by representatives of the three Defendant that applied to the EC's leniency program.

44.    The EC's investigation gathered evidence regarding a cartel that was operating in the industry with the purpose of fixing prices and allocating customers and markets *"on a worldwide level."* (Emphasis added.)

45.    The EC determined that high-ranking management, such as managing directors, sales directors and board members, participated in regular meetings and discussions with competitors during which the unlawful actions took place.

46.    The EC possesses evidence that the companies and these high-ranking managers were well aware that their behavior was illegal.

47.    Nothing in the EC disclosures of the cartel limited the operation of the cartel to Europe; conversely, the disclosures indicate that an international cartel was operated by international companies.

48.    For example, the EC's September 19, 2007 press release stated that the Prym Group received full immunity from fines under the Commission's leniency program "in respect of the *worldwide cartel* on the markets for other fasteners and

attaching machines," as it was the first to provide information about the cartel for "other fasteners and their attaching machines." (Emphasis added.)

49.    EC Competition Commissioner Neelie Kroes stated that the conspiracy among these "major fastening technology producers" maintained artificial price levels and included agreements to allocate customers and markets.

50.    The three largest producers of Fasteners and/or Zippers in the world - the Prym Group, the YKK Group and the Coats Group - received complete or partial immunity and reduction of fines, meaning they effectively admitted the existence of the conspiracy, identified the participants in the conspiracy, provided evidence of the conspiracy and confessed to their own and their co-conspirators' participation in the unlawful conduct.

51.    Indeed, the Prym Group issued a Press Release on September 19, 2007 stating as follows: "The members of the board of management of the Prym Group in charge at the times of the cartels, who are no longer active in the Prym undertakings, have at all times *admitted the participation* and cooperated with the Commission in its investigations." (Emphasis added.)

Operation of the Conspiracy, Which Affected the United States

52.    As early as 1977, the Prym Group and the Coats Group agreed to divide and share the whole haberdashery market between them.

53.    Thereafter, by 1991, the YKK Group and Scovill (based in the United States), and others not named as defendants herein, joined the combination and conspiracy.

14

54.    Pursuant to the combination and conspiracy, Defendants agreed to, *inter alia*:

   a.  share the whole market for Fasteners and/or Zippers;

   b.  coordinate price increases in annual "price rounds;"

   c.  exchange price information and discuss price increases;

   d.  fix prices on a product-by-product and country-by-country basis; and

   e.  allocate customers on a worldwide level.

55.    All of these actions were conducted as a part of a decades-long, on-going, overarching, international conspiracy.

56.    No Defendant ever withdrew from the conspiracy and all Defendants are jointly and severally liable for all of the unlawful conduct under the antitrust laws.

Industry Meetings

57.    Representatives of Defendants have regularly met through such organizations as the German trade association Fachverband Verbindungs- und Befestigungstechnik ("VBT"), at which meetings the conspiracy was organized and operated.

58.    For example, the companies agreed, among other things, on coordinated price increases in annual "price rounds," in the framework of the work circles organized by VBT.

Price Increases Even as Demand Declines

59.    Prices for Fasteners and/or Zippers have risen dramatically over the period of the alleged misconduct, beginning in the mid- 1970s and continuing until the present.

60.    In particular, in spite of a remarkable decline in demand since the mid-1990s, prices of Fasteners and/or Zippers have risen during the period since the mid-1990s by over 25 percent (25%).

61.    Declining demand for Fasteners and/or Zippers should have acted to restrain price increases or cause prices to fail. In addition, manufacturing productivity has risen significantly over that time period, making the products less costly to produce, which should also have forced prices to decline in a competitive market. Moreover, the rise in prices of Fasteners and/or Zippers exceeds the rise in prices of the principal manufacturing cost inputs.

62.    Rather than the stable, or even falling, prices that would be expected in a competitive market, the declining demand, higher productivity and lack of dramatic cost input increases have instead resulted in dramatic price *increases* for Fasteners and/or Zippers.

Other Structural Characteristics of the Industry

63.    A number of structural characteristics of the Fasteners and/or Zippers industry facilitate the implementation and maintenance of the worldwide, horizontal conspiracy alleged herein.

64.    Although they may differ in material, color and tape pattern, Fasteners and/or Zippers are essentially commodity-like products. These products come in standard sizes, which may vary by product type within the Fastener and/or Zipper group. Major suppliers advertise their products under standard trade names, suggesting that products are easily characterized in the market by material composition, design and function.

65.    It is easier to form and sustain a cartel when the product in question is commodity-like because it is easier to agree on prices to charge and to monitor those prices once an agreement is formed.

66.    According to the United States Census Bureau's Annual Survey of Manufacturers, Cut and Sew Manufacturing 1993 to 2005, demand for Fasteners and/or Zippers in the United States has been in dramatic decline since at least 1995. The domestic apparel industry has seen production fall dramatically, especially following the passage of NAFTA and the WTO, which hastened the shift of clothing production overseas.

67.    Static or declining demand is another factor which makes the formation of a collusive arrangement more likely. With static or falling demand, firms have a greater incentive to collude to avoid price competition.

68.    The Fastener and/or Zipper industry in the United States is highly concentrated, facilitating coordination of prices. There is control of a large share of production by a few players. YKK is the largest zipper manufacturer in the world with 50% of the worldwide market share. Coats is the second largest producer. Together with Prym, these three Defendants alone exercise control of the Fasteners and/or Zippers market which far exceeds the United States Department of Justice's ("DOJ") guidelines for a highly concentrated industry.

69.    High concentration facilitates coordination since there are fewer cartel members among which to coordinate pricing or allocate markets, and it is easier to monitor pricing and production of other cartel members.

17

70.    There appear to be few, if any, available substitutes for Fasteners and/or Zippers, which facilitates collusion among competitors. When substitutes are available in a given industry, supra-competitive pricing induces purchasers to switch to substitute products. When no substitutes are available, cartel members can raise the price without concern that purchasers will switch from the product.

71.    Fasteners and/or Zippers are sold to the apparel industry, in which thousands of firms engage in production at any point in time. In 2002, there were over 9,000 firms listed by the U.S. Census Bureau as being engaged in apparel manufacturing. Thus, there are many thousands of purchasers of Fasteners and/or Zippers.

72.    With many buyers, each of which constitutes a small share of the total marketplace, there is less incentive for cartel members to cheat on collusive pricing arrangements; each potential sale is small while the risk of disrupting the collusive pricing arrangements carries large penalties.

73.    Defendants all sell as horizontal competitors at the same wholesale and retail levels of distribution. When sellers operate at different levels of the distribution chain, it is more difficult to monitor adherence to the cartel arrangement. When sellers operate at the same level of the distribution chain, as in this industry, it is easier to monitor adherence to the arrangement.

74.    Defendants sell, and Plaintiff and members of the Class purchase, Fasteners and/or Zippers primarily on the basis of price. One Defendant's Fasteners and/or Zippers are substitutable for another's. As one supplier in this market describes it: when quality is good enough for garment uses across suppliers, then potential suppliers "can compete only on price." Price is the most important competitive factor in Fasteners

18

and/or Zippers, and the standardized nature of Fasteners and/or Zippers hinders substantial and material non-price competition.

## ANTITRUST INJURY

75.    The unlawful contract, combination or conspiracy alleged above had and is having, *inter alia*, the following effects:

    a.  Prices charged by Defendants and their co-conspirators to Plaintiff and the members of Class for Fasteners and/or Zippers were maintained at artificially high and noncompetitive levels;

    b.  Plaintiff and members of the Class were required to pay more for Fasteners and/or Zippers than they would have paid in a competitive marketplace unfettered by Defendants' and their co-conspirators' collusive and unlawful conduct; and

    c.  Plaintiff and members of the Class have been deprived of the benefits of free, open and unrestricted competition in the market for Fasteners and/or Zippers.

76.    During and throughout the period of the contract, combination or conspiracy alleged above, Plaintiffs and members of the Class directly purchased Fasteners and/or Zippers from one or more Defendants.

77.    Plaintiff and the other Class members paid more for Fasteners and/or Zippers than they would have paid under conditions of free and open competition.

78.    As a direct and proximate result of the illegal contract combination or conspiracy alleged above, Plaintiff and the members of the Class were injured and

financially damaged in their businesses and property, in amounts that are not presently determined.

79.    Plaintiff and the members of the Class have suffered antitrust injury of the type that the federal laws were meant to punish and prevent.

## CLASS ACTION ALLEGATIONS

80.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81.    Plaintiff brings this action on behalf of itself and the members of the Class comprising:

> All persons or entities that purchased Fasteners and/or Zippers in the United States directly from Defendants or their unnamed co-conspirators at any time from January 1, 1999 to the present. Excluded from the Class are Defendants, their co-conspirators and their representatives, parents, subsidiaries and affiliates, and government entities.

82.    Plaintiff brings this action as a class action under Rule 23(a), 23 (b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure, on its own behalf and on behalf of all members of the Class.

83.    Due to the nature of the trade and commerce involved, Plaintiff believes that the Class numbers in the thousands, the exact number and identities being known to Defendants.

84.    The Class is so numerous and geographically dispersed that joinder of all members is impracticable.

85.    Class members are identifiable from information and records in the possession of Defendants.

86.    There are questions of law and fact common to the Class. These common questions relate to the existence of the conspiracy alleged, and to the type and common pattern of injury sustained as a result thereof. The questions include but are not limited to:

a.    Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices for Fasteners and/or Zippers sold in the United States;

b.    The identity of participants in the conspiracy;

c.    The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by Defendants and their co-conspirators in the furtherance of the conspiracy;

d.    Whether the alleged conspiracy violated Section 1 of the Sherman Act;

e.    Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of Plaintiff and other members of the Class;

f.    The effect of Defendants' conspiracy on the prices of Fasteners and/or Zippers sold in the United States during the Class Period; and

g.    The appropriate measure of damages sustained by Plaintiff and other members of the Class.

87.    Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class. In addition, Plaintiff is

represented by competent counsel experienced in the prosecution of class action antitrust litigation.

88.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

89.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

90.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by members of the Class who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## EQUITABLE TOLLING

91.     Throughout the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.

92.     Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.

93.     Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this litigation was commenced.

## INTERSTATE AND COMMERCE

94.     The conduct of Defendants and their co-conspirators has taken place in, and affected the continuous flow of, interstate trade and commerce of the United States, in that, *inter alia*:

a.  Defendants and their co-conspirators have sold Fasteners and/or Zippers throughout the United States;

b.  Defendants and their co-conspirators have each used instrumentalities of interstate commerce to sell Fasteners and/or Zippers throughout the United States;

c.  In furtherance of the conspiracy alleged herein, Defendants have traveled between states and have exchanged communications through interstate wire communications;

d.  The conspiracy alleged herein has affected millions of dollars of commerce; and

e.  Defendants and their co-conspirators have inflicted antitrust injury by artificially raising prices paid by Plaintiff and other entities who are themselves engaged in commerce.

## CLAIM FOR RELIEF

### For Violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act

95.  Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

96.  From a date unknown, but beginning at least as early as January 1, 1999, and continuing to date, Defendants and their co-conspirators have combined, conspired and or contracted to restrain interstate trade in violations of Section 1 of the Sherman Act, 15 U.S.C. §1, and Section 4 of the Clayton Act, 15 U.S.C. §15.

97.  In furtherance of the unlawful conspiracy, upon information and belief, each of Defendants and their co-conspirators has committed overt acts, including, *inter alia:*

> a.  agreeing to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize prices of Fasteners and/or Zippers sold in the United States;
>
> b.  communicating with co-conspirators regarding prices to be charged for Fasteners and/or Zippers;
>
> c.  meeting with co-conspirators in secret in order to keep the existence of the conspiracy unknown so as to foster the illegal anti-competitive conduct described herein;
>
> d.  refraining from competition by refusing to offer Fasteners and/or Zippers at prices below the agreed-upon fixed price;
>
> e.  agreeing to allocate customers;
>
> f.  agreeing to allocate geographic markets; and

g.   agreeing to allocate product markets.

98.    Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, raise and/or stabilize prices of Fasteners and/or Zippers sold in the United States and throughout the world.

99.    Defendants' anti-competitive agreement was implemented by, *inter alia,* coordinated price increases, with the actual and intended result that Plaintiff and members of the Class paid supracompetitive prices for Fasteners and/or Zippers. As a direct and proximate result of the conspiracy, Defendants have restrained competition in the Fasteners and/or Zippers market and injured Plaintiff and each Class member in their business and property in that they have each paid a higher price for Fasteners and/or Zippers than they would have paid absent the concerted unlawful activity.

100.    Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property in an amount to be determined according to proof and are entitled to recover threefold the damages sustained pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

101.    The conduct of Defendants and their co-conspirators constitutes a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## PETITION FOR RELIEF

WHEREFORE, Plaintiff petitions that:

A.    The Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be

appointed class representative and that Plaintiffs counsel be appointed as counsel for the Class.

B.    The contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

C.    Judgment be entered for Plaintiff and members of the Class against Defendants, jointly and severally, for three times the amount of damages sustained by Plaintiff and the Class as allowed by law, together with the costs of the action, including reasonable attorneys' fees, and pre- and post-judgment interest.

D.    Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

    a.    Continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

    b.    Communicating with any other person engaged in manufacture, distribution or sale of Fasteners and/or Zippers except to the extent necessary in connection with a *bona fide* sales transaction between the parties to such communications.

E.    Plaintiff and members of the Class have such other relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial of all issues triable by jury.

**DATED:**    November 19, 2007              **Respectfully submitted,**

Daniel Hume (DH 1358)
Beverly Tse
**Kirby McInerney LLP**
830 Third Avenue, 10th Floor
New York, NY 10022
Phone: (212) 371-6600
Fax:    (212) 751-2540


Richard M. Volin
Elizabeth K. Tripodi
**Finkelstein Thompson LLP**
1050 30th Street N.W.
Washington, DC 20007
Phone: (202) 337-8000
Fax:    (202) 337-8090